UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| STEVENSON FISHER, | Case No. 2:15-cv-00358-RFB-NJK |
| Plaintiff, | **ORDER** |
| v. | Plaintiff's Motion to Certify Class (ECF No. 112), Defendant's Motion for Summary Judgment (ECF No. 117) |
| MJ CHRISTENSEN JEWELERS, LLC, *et al*., | |
| Defendants. | |

## I.    INTRODUCTION

Before the Court is Plaintiff's Motion to Certify Class (ECF No. 112) and Defendant Le Vian Corporation's Motion for Summary Judgment (ECF No. 117). For the reasons stated below, Plaintiff's Motion to Certify Class (ECF No. 112) is GRANTED, and Defendant's Motion for Summary Judgment (ECF No. 117) is DENIED without prejudice.

## II.    BACKGROUND

This case was removed to federal court on February 27, 2015. (ECF No. 1). Plaintiff's Second Amended Complaint, filed on November 17, 2015 (ECF No. 47), asserts the following claims, on a class-wide basis, against Defendants MJ Christensen Jewelers LLC ("MJC"), Le Vian Corporation ("Le Vian"), and LX Publications, LLC ("LX"): (1) violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. 227; and (2) violation of the Nevada Deceptive Trade Practices Act ("NVDTPA"), NRS Chapter 598.

Plaintiff filed his Motion to Certify Class (ECF No. 112) on November 18, 2016, on the close of discovery. Defendant Le Vian Corporation Responded on December 19, 2016. (ECF No. 119). Plaintiff Replied in support of class certification on January 16, 2017. (ECF No. 127).

1    Defendant Le Vian Corporation filed its Motion for Summary Judgment on December 19,

2    2016. (ECF No. 117). Plaintiff Responded on January 23, 2017. (ECF No. 128). Defendant Replied

3    on February 6, 2017. (ECF No. 130).

4    The Court held a hearing on the Motion for Class Certification on July 25, 2017.

5

6    **III.    CLASS CERTIFICATION**

7    **A.  Factual Allegations**

8    The following facts are alleged in Plaintiff's Amended Complaint and Motion for Class

9    Certification. Le Vian designs and manufactures jewelry, which it sells wholesale to retailers. MJC

10   is an independent Las Vegas retailer that began selling Le Vian's jewelry in the summer of 2014.

11   In the fall of 2014, MJC informed Le Vian that it would like to host a sales event on December 4,

12   2014 at MJC's store, featuring Le Vian jewelry ("trunk show"). To promote the trunk show, MJC

13   paid LX, an independent marketing vendor, to invite MJC's customers via mail and a telephone

14   message recorded by MJC's owner. Plaintiff is pursuing MJC and Le Vian on theories of vicarious

15   liability, based on allegations that their marketing programs for the trunk show directed a phone

16   blast that was conducted by LX.

17   MJC provided LX (1) a prerecorded voice message advertising the Le Vian trunk show

18   and (2) spreadsheets with MJC customer information. LX called consumers with the prerecorded

19   message. MJC provided LX two separate spreadsheets. One was a spreadsheet of MJC customer

20   phone numbers from MJC's customer database. The list contained approximately 13,000 phone

21   numbers ("Phone Number Spreadsheet"). The second spreadsheet was for a mailer, and contained

22   the names and addresses of the same MJC customers whose phone numbers were in the phone

23   number spreadsheet ("Mailer Spreadsheet"). In the course of discovery in this litigation, MJC has

24   produced a spreadsheet with combined information from the Phone Number Spreadsheet and the

25   Mailer Spreadsheet.

26   LX emailed a company called CallMultiplier, regarding the "MJ Christensen Call", and

27   instructed CallMultiplier to schedule a call for December 3, 2014 at 12:00 PST, using the caller

28   ID of MJC's phone number. CallMultiplier ultimately transmitted a total of 8,225 calls. LX paid

1  CallMultiplier for transmitting the calls. A different company, FullTel, Inc., made 6,805 of the

2  calls, including the call to Plaintiff Fisher. FullTel provided a spreadsheet in discovery containing

3  6,805 rows of data, including the date and the time of the call, the calling party phone number, the

4  called party phone number, and the call disposition (answered, busy, etc). CallMultiplier provided,

5  in discovery in this litigation, the call detail records for the remainder of the calls in the form of a

6  spreadsheet indicating the date, time, phone number of the called party, and result (failed or

7  succeeded).

8          Plaintiff Fisher received the call on his cell phone on December 3, 2014, at 12:30 pm, while

9  he was at his home in Las Vegas, Nevada. The call came from MJC's phone number. When he

10  answered, Plaintiff heard a prerecorded voice message, in which a voice identified himself as Cliff

11  Miller with MJC promoting a Le Vian VIP event for Thursday, December 4, 2014. Fisher has no

12  relationship with MJC and has never given MJC consent to call his cell phone. Fisher has no

13  relationship with Le Vian and has never given Le Vian consent to call him.

14      **B. Legal Standard**

15          Class certification is governed by Federal Rule of Civil Procedure 23. Under Rule 23(a),

16  the party seeking certification must demonstrate, first, that: (1) the class is so numerous that joinder

17  of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

18  claims or defenses of the representative parties are typical of the claims or defenses of the class,

19  and (4) the representative parties will fairly and adequately protect the interests of the class. The

20  proposed class must satisfy at least one of the three requirements listed in Rule 23(b). Here,

21  Plaintiff seeks to certify a class based on either 23(b)(2) or 23(b)(3).

22          The Supreme Court has "cautioned that a court's class certification analysis must be

23  rigorous and may entail some overlap with the merits of the plaintiff's underlying claim," however,

24  "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification

25  stage." Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 133 S. Ct. 1184, 1195 (2013) (internal

26  quotation marks and citations omitted). "Merits questions may be considered to the extent – but

27  only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for

28  class certification are satisfied." Id. "Rule 23 does not set forth a mere pleading standard." Wal-

1    mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). Rather, "[a] party seeking class

2    certification must affirmatively demonstrate his compliance with the Rule – that is, he must be

3    prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or

4    fact, etc." Id. (alteration in original).

5    **C. Discussion**

6    Plaintiff Fisher seeks certification of a class of consumers who received telemarketing calls

7    from Defendants using a prerecorded voice message. Specifically, Plaintiff asks the Court to

8    certify the following national class: All persons residing in the United States who received a

9    telephone call made using a prerecorded voice or automated telephone dialing system by or on

10   behalf of Defendants, on or after January 20, 2011. Plaintiff asks additionally, or else alternatively,

11   that the Court certify the following subclass: All persons residing in Nevada who received a

12   telephone call made using a prerecorded voice or automated telephone dialing system by or on

13   behalf of Defendants, on or after January 20, 2011. Plaintiff requests that the following persons be

14   excluded from all class definitions: (a) any employees, officers, or directors of the Defendants; (b)

15   any attorney appearing in this action; and (c) any judge assigned to hear any aspect of this action.

16   Plaintiff claims that the call at issue violated the TCPA because it was made using an

17   autodialer, without his prior express consent. See 47 U.S.C. § 227(b)(1)(A). Defendant Le Vian

18   opposes class certification on the following grounds: (a) Plaintiff has not established a class that

19   is ascertainable by reference to objective criteria without resort to numerous individualized, fact-

20   intensive questions; (b) Plaintiff seeks to broaden the class impermissibly beyond the class

21   definition set forth in the operative Complaint; and (c) the proposed class includes calls where no

22   violation of the TCPA could have occurred because MJC had consent to call the number.

23   Defendant further argues that the Rule 23(a) prerequisites are not met. Defendant also argues that

24   the class should not be certified under Rule 23(b)(2) because it is not primarily seeking injunctive

25   relief, but rather, monetary damages. Finally, Defendant argues that the class should not be

26   certified under Rule 23(b)(3) because Plaintiff has failed to establish that common issues

27   predominate and that a class action would be a superior mechanism for resolving the allegations.

28   The Court considers each of these arguments in turn.

**1. Impermissible Expansion Beyond Complaint's Definition**

Le Vian argues that Plaintiff impermissibly seeks to expand the class beyond the definition in the Complaint. Le Vian argues that the Complaint was limited to calls to cell phones, whereas Plaintiff's new definition includes calls to residential landlines, which are discussed in a different subsection of the TCPA.

The operative Complaint does state that the "proposed class action [is] brought on behalf of consumers that received telemarketing calls to their cell phones made using a prerecorded voice or automated dialing system by or on behalf of Defendants, for which calls the Defendants never obtained express, written consent from the consumers." Plaintiff argues that the TCPA does not distinguish between cell phones and landlines when callers use a prerecorded voice, and that even though a different subsection of the same statute refers to cell phones, the distinction is without a difference in terms of rights under the statute. The TCPA contains parallel provisions which are nearly identical in language, and which address cell phones, and landlines, respectively:

> "It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States – (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice… (iii) to any telephone number assigned to a … cellular telephone service… (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes…" 47 U.S.C. § 227(b)(1)(A)-(B).

Le Vian argues that expanding the class to include landlines would prejudice Defendants because Plaintiff previously refused to respond to discovery in this case inquiring as to landlines. However, as discussed at the hearing on this motion, that specific discovery request only pertained to Plaintiff Fisher, who was contacted on his cell phone, not on a landline. Defendants have been on notice of the set of marketing calls, including calls to landlines, that Plaintiff was targeting in his Complaint, although the original class definition does not specify that it will include landlines. There are statutory exemptions that would apply to calls made to residential landlines, which would not apply to calls made to cell phones; however, at the hearing on this motion, parties represented that those exemptions are not at issue in this litigation. Therefore, the Court does not

find that Defendants would be prejudiced by a class definition that includes both landlines and cell phones.

### 2. Ascertainability

Defendant Le Vian argues that the class is overbroad and not ascertainable because it includes every recipient of a prerecorded message from any of the Defendants since January 20, 2011. A class must be ascertainable; in Le Vian's view, ascertainability requires the application of objective criteria rather than engaging in fact-specific inquiry. Plaintiff contends that class membership can in fact be determined by a variety of objective criteria, including the MJ Christensen spreadsheets provided in discovery, FullTel and CallMultiplier call detail records, and simple administrative procedures using the called phone numbers to identify class members. The documents indicate what numbers were called, as well as the names, phone numbers, and addresses associated with the phone numbers from MJC's customer database. Therefore, the class appears to be clearly ascertainable. Furthermore, many of Le Vian's arguments as to ascertainability appear to, in fact, be arguments going to the administrative feasibility of the determining the class. The Ninth Circuit has held that class proponents are not required to demonstrate that there is an administratively feasible way to determine who is in the class in order for the class to be certified. See Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1123 (9th Cir. 2017).

Le Vian argues that the proposed class includes a substantial number of people who voluntarily gave their telephone numbers to MJC and therefore have no grievance, and also that the class goes beyond calls related to the specific trunk show at issue, and would include calls that have nothing to do with MJC or Le Vian. As to the issue of the overbreadth of the class definition, Plaintiff has proposed, in his Reply briefing, a limitation of the class to those who received a call regarding the Le Vian trunk show at MJ Christensen to be held on December 4, 2014, which call was received on or about December 3, 2014.  The Court finds this to be an appropriate limitation. The class will be limited to those specifically affected by the December 3, 2014 phone blast. As to issues of consent, Defendant Le Vian has not provided specific evidence of people who voluntarily gave their telephone number. See, e.g., Meyers v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1042 (9th Cir. 2012) (rejecting the argument that individualized issues of consent preclude

1  a finding of typicality or commonality where defendant did not show instances where express

2  consent was given before calls were placed).

3  **3. Rule 23(a) Factors**

4  *a. Numerosity*

5  Numerosity requires that the proposed class be so numerous that joinder of all class

6  members in the action is impracticable. Fed. R. Civ. P. 23(a)(1). There is no set numerical cutoff

7  used to determine whether a class is sufficiently numerous. Courts must examine the specific facts

8  of each case. See General Tel. Co. of the Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980).

9  Le Vian does not challenge whether the numerosity requirement would be met by the

10  proposed class in this case, which would consist of at least 8,225 consumers who received the

11  December 3, 2014 phone blast. Therefore, the Court finds that this requirement is met.

12  *b. Commonality*

13  "The commonality and typicality requirements of FRCP 23(a) tend to merge, but they both

14  serve as guideposts for determining whether under the particular circumstances maintenance of a

15  class action is economical and whether the named plaintiff's claim and the class claims are so

16  interrelated that the interests of the class members will be fairly and adequately protected in their

17  absence." Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1041 (9th Cir. 2012)

18  (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 n.5 (2011)) (quotation marks

19  omitted). "All questions of fact and law need not be common to satisfy the commonality

20  requirement. The existence of shared legal issues with divergent factual predicates is sufficient, as

21  is a common core of salient facts coupled with disparate legal remedies within the class. . . . The

22  common contention must be of such a nature that it is capable of classwide resolution – which

23  means that determination of its truth or falsity will resolve an issue that is central to the validity of

24  each one of the claims in one stroke. . . . Representative claims are typical if they are reasonably

25  co-extensive with those of absent class members; they need not be substantially identical." Id. at

26  1041-42 (citations and quotation marks omitted).

27  Plaintiff argues that there are numerous common questions of law and fact, for example:

28  whether Defendants used a prerecorded voice to make the calls at issue; whether Defendants used

1  an automatic dialing system to make the calls; whether the calls were telemarketing calls; whether

2  the class members provided express, written consent to receive the calls; and whether Plaintiff and

3  class members are entitled to damages under the TCPA. Defendant Le Vian argues that consent is

4  a key issue that cannot be determined on a class-wide basis. Several of Le Vian's arguments relate

5  to inclusion of class members to whom calls were made prior to 2014, which is a moot argument

6  since the Court is limiting the class to members who received the marketing call on December 3,

7  2014. Defendant also argues that consent that was provided prior to October 16, 2013, would have

8  applied to numbers called on December 3, 2014, and has shown four numbers which were provided

9  prior to 2013 to MJC's electronic database, which would be included in the proposed class. In

10  Meyer, the Ninth Circuit examined a declaratory ruling issued by the Federal Communications

11  Commission ("FCC") and determined that absent specific evidence of express consent, arguments

12  about varying consent amongst class members did not defeat commonality. 707 F.3d at 1042. In

13  the instant case, MJC testified that it only collected client information on repair tickets and for

14  customer profiles, and that neither repair tickets nor customer profiles mention MJC calling the

15  customer about marketing. Therefore, Le Vian has not raised sufficient evidence of individualized

16  consent variability to defeat commonality.

17  The Court finds that the requirement of commonality is met.

18        *c. Typicality*

19  "Representative claims are typical if they are reasonably co-extensive with those of absent

20  class members; they need not be substantially identical." Meyer, 707 F.3d at 1042 (citation and

21  quotation marks omitted). Plaintiff argues that his claims are typical because he received an

22  automatic dialed call on his cell phone advertising the trunk show.

23  Defendant Le Vian first argues that since Plaintiff's call was received on his cell phone,

24  his claim is atypical of those received on landlines. However, Defendant has not provided specific

25  arguments as to why, under the law, these claims would be differentiable, as the Court has

26  discussed. Defendant also argues that Plaintiff lacks Article III standing given that he suffered no

27  injury as a result of the alleged violation. In order to have standing, plaintiffs "must have (1)

28  suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,

- 8 -

and (3) that is likely to be redressed by a favorable judicial decision." Spokeo Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citations omitted). "Article III requires a concrete injury even in the context of a statutory violation." Id. at 1549. A "bare procedural violation, divorced from any concrete harm" does not satisfy the injury-in-fact requirement. Id. Here, Plaintiff admits he was not charged for the call and suffered no economic injury as a result; however, he argues that the intrusion into his privacy was a cognizable injury. "In determining whether an intangible harm constitutes injury in fact" the Court must look to "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American court" as well as Congress' judgment to "define injuries and articulate chains of causation that will give rise to a case or controversy." Id. (citations omitted). The Ninth Circuit has held, since Spokeo, that a recipient of text messages from a gym satisfied the injury-in-fact requirement for Article III standing by alleging that the gym owner and marketing company violated the TCPA by sending him unsolicited text messages on his cellular telephone about a gym membership. Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1042 (9th Cir. 2017). The Ninth Circuit's holding was based on the fact that actions to remedy invasions of privacy and nuisance have long been heard by American courts, and that the contact, absent consent, presented precise harm and infringed the same privacy interest Congress sought to protect in enacting the TCPA. Id. at 1042-43.

Therefore, the Court finds that Plaintiff does have standing to bring this lawsuit, and that his claim is typical of the claims of the proposed class.

### d. Adequacy

"Rule 23(a)(4) permits the certification of a class action only if the representative parties will fairly and adequately protect the interests of the class." Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003) (citation and quotation marks omitted). The Ninth Circuit has instructed an inquiry into whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class[.]" Id. (citation omitted).

Le Vian argues that Plaintiff and class counsel are not adequate representatives because

1    Plaintiff was allegedly referred to his counsel as part of a scheme for reporting autodialed calls on

2    the basis of which to bring a lawsuit. Based on the record of the hearing on this motion, the Court

3    found that counsel had, at no point, provided any compensation to Plaintiff for his participation in

4    this lawsuit. Plaintiff voluntarily entered his name and report of the call onto a website which

5    collected reports of TCPA violations, and he was subsequently connected to his legal

6    representatives. "Only conflicts that are fundamental to the suit and that go to the heart of the

7    litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." In re Online

8    DVD-Rental Antitrust Litig., 779 F.3d 934, 942 (9th Cir. 2015) (citation and quotation marks

9    omitted). In that case, the Ninth Circuit held that class representatives were adequate, despite

10   objections about their $5,000 incentive awards. Since there were no structural differences in the

11   claims of the class representatives and the other class members, there was no conflict that would

12   undermine the class representative's adequacy. Id. at 943. Defendant has not raised a sufficient

13   basis for finding a conflict that would make Plaintiff an inadequate class representative.

14       Defendant Le Vian also argues that Plaintiff Fisher's criminal history renders him

15   inadequate. Plaintiff pled guilty to his involvement in a robbery of a fast food restaurant. This

16   occurred in 2007, and Plaintiff has been charged with no crimes since. He successfully completed

17   probation and on April 20, 2010 received an Order Honorably Discharging Probations with

18   Restoration of Civil Rights. The charges were reduced to a gross misdemeanor, and Plaintiff served

19   only probation. The Court does not find that this remote conviction casts doubt on Plaintiff's

20   adequacy or credibility as a class representative. This criminal conviction was not related to fraud

21   or dishonesty. Further, Plaintiff has been an engaged participant in this litigation.

22       Therefore, Plaintiff and class counsel satisfy the adequacy requirement.

23       **4.  Analysis of Rule 23(b)(2)**

24       Rule 23(b)(2) provides for class certification when "the party opposing the class has acted

25   or refused to act on grounds that apply generally to the class, so that final injunctive relief or

26   corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ.

27   P. 23(b)(2). Le Vian argues that certification under Rule 23(b)(2) would be inappropriate because

28   the proposed class is primarily interested in recovering monetary damages, and the class lacks the

1  cohesiveness necessary for certification under Rule 23(b)(2). Le Vian argues that an injunction

2  here is unnecessary and inappropriate because there is no evidence showing any risk of future

3  violations of the TCPA by Defendants. In two years since the call, Plaintiff has not received any

4  other calls from Defendants. Although in Meyer the Ninth Circuit found that a TCPA class could

5  be certified under Rule 23(b)(2), that case upheld the district court's finding that the defendant

6  would continue to violate the TCPA if an injunction did not issue, and affirmed the granting of

7  provisional certification of the class under Rule 23(b)(2) for the primary purpose of entering a

8  preliminary injunction. 707 F.3d at 1045.

9  While Plaintiff has pled injunctive and declaratory relief, those claims are incidental to the

10  monetary damages claim under the TCPA, which provides for "$500 in damages for each

11  violation" which can be trebled if "the defendant willfully or knowingly violated" the TCPA. The

12  complaint seeks $12 million in recovery.  Furthermore, the Court does not find that there is a

13  likelihood that the alleged violations in this case would continue in the future.  The Court agrees

14  with Le Vian that Plaintiff has not shown a need for injunctive relief, and that the monetary relief

15  requested is more than incidental. Rather, damages are fundamental to Plaintiff's case.  Thus,

16  certification under Rule 23(b)(2) is not appropriate in this case.

17  **5.  Analysis of Rule 23(b)(3)**

18  Certification under Rule 23(b)(3) is proper when "[1] questions of law or fact common to

19  class members predominate over any questions affecting only individual members, and that [2] a

20  class action is superior to other available methods for fairly and efficiently adjudicating the

21  controversy." Fed. R. Civ. P. 23(b)(3).

22  Defendant Le Vian argues that common questions are defeated based on the fact that some

23  of the members of the putative class consented to the calls. However, as the Court has discussed,

24  Defendant has not provided specific evidence of consent defeating commonality. The Court finds

25  that common questions of law and fact do predominate over questions affecting individual class

26  members, and certifies the class under Rule 23(b)(3).

27  The Court also finds that all of the reasons noted above to certify the class in this case also

28  support certification of a subclass limited to Nevada given Plaintiff's receipt of the call in Nevada.

**IV.    MOTION FOR SUMMARY JUDGMENT**

Defendant Le Vian filed its Motion for Summary Judgment prior to the Court's determination of whether or not it would certify a class. While "the district court has discretion to rule on a motion for summary judgment before it decides the certification issue," it need not. Wright v. Schock, 742 F.2d 541, 543-44 (9th Cir. 1984).  The Court therefore denies Defendant's Motion for Summary Judgment without prejudice, and with leave to refile in light of the Court's decision on class certification.

**V.    CONCLUSION**

IT IS ORDERED that Plaintiff's Motion to Certify Class (ECF No. 112) is GRANTED and the Court certifies the following class, under Fed. R. Civ. P. 23(b)(3): "**All persons residing in the United States who received a telephone call made using a prerecorded voice, regarding the Le Vian trunk show at MJ Christensen to be held on December 4, 2014, which call was received on or about December 3, 2014.**"  The Court also certifies the following subclass, under Fed. R. Civ. P. 23(b)(3):  "**All persons residing in Nevada who received a telephone call made using a prerecorded voice, regarding the Le Vian trunk show at MJ Christensen to be held on December 4, 2014, which call was received on or about December 3, 2014.**"

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (ECF No. 117) is DENIED without prejudice.

DATED: March 6, 2018.

**RICHARD F. BOULWARE, II**
**United States District Judge**